UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| SUSAN KAY ELLINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CV617-072 |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

FILED
Scott L. Poff, Clerk
United States District Court

By James Burrell at 1:08 pm, Mar 01, 2018

## REPORT AND RECOMMENDATION

Plaintiff Susan Kay Ellington seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance (DIB) and Supplemental Security Income (SSI) benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation

omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2015) (footnote added).

## II. ANALYSIS

Ellington, who was 58 years old when her disability application was denied, alleges disability beginning December 13, 2009. Tr. 8-25, 315-24. She has a high school education and past work experience as a comp/controller for a car dealership. Tr. 41, 77. After a hearing, the ALJ issued an unfavorable decision. Tr. 8-25. He found that Ellington's bilateral hand degenerative joint disease and cervical and lumbar spine degenerative disc disease, status post-fusion surgery, constituted severe impairments but did not meet or medically equal a Listing. Tr. 13-16. Based on the evidence of record, the ALJ found that she retained the RFC for a subset of light work except that:

> . . . Occasionally, [she] could push/pull up to 10 pounds. She could stand/walk for up to five hours out of every eight-hour workday [and] she could sit for up to six hours out of every eight-hour workday with normal breaks. Frequently, [she] could stair and ramp climb, but she could not climb ropes, ladders, or scaffolds. [She] could balance frequently. She could stoop, kneel, crouch, or crawl occasionally. Frequently, she could handle, finger, or feel. [She] has no limitations regarding concentration, persistence, and pace, as well as no social deficits.

Tr. 16.

Plaintiff, he determined, was capable of performing her past work

as a comp/controller, sedentary work with an SVP[2] of 4, as actually and generally performed, and did not identify any alternative work plaintiff could perform.  Tr. 18; *see* DICOT 160.167-058.  Ellington disagrees, arguing that the ALJ failed to properly weigh the medical opinion evidence and erred in his RFC and credibility assessments.  Docs. 10 & 13.

### A.   Medical Opinion Evidence

Based on the creditable evidence of record, the ALJ concluded that Ellington retained the RFC to perform light work with postural and environmental limitations.  Tr. 16.  Plaintiff contends that the ALJ improperly discredited consultative examiners Drs. Andre Haynes, John Whitley, and Julian Fuerst, which he found inconsistent with the record as a whole, and improperly weighed non-examining agency reviewing physicians.  Doc. 10 at 8-16; doc. 14 at 1-10.

#### 1.   Dr. Haynes' Opinions

Oddly, Dr. Haynes' May 2015 opinion that due to "back pain" plaintiff could occasionally lift up to 50 pounds and would be unlimited in

---

[2]   Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, App. C.

4

her ability to push/pull, finger, handle, and feel is completed on a checklist form with a different claimant's name and case number. Tr. 815. This, despite his contemporaneous letter assessment and observation notes which opined that Ellington had swelling in both hands and was incapable of closing them fully, picking up coins without difficulty, or writing with her dominant hand and was moderately impaired in her ability to carry or push/pull heavy objects. Tr. 809-10 & 812.

Dr. Haynes reevaluated plaintiff's limitations to address the discrepancies, and in October 2015 revised his opinion to limit Ellington to never lift more than 20 pounds and only occasionally push/pull, finger, handle, and feel due to "back pain and arthritis." Tr. 838-49. The ALJ did not address the discrepancies between the letter opinion and two checklist assessments except to opine that the first assessment was "more consistent with the record as a whole" and discount the second as "rel[ying] too heavily on [Ellington]'s performance during examinations, which cannot be objectively verified, and allegations from the claimant that have been proven false, such as her assertion that she has lupus." Tr. 17. He further discounted the opinions as deriving from only a

5

short-term relationship (as are *all* consultative examinations, by their very nature) and inconsistent with a single work-restriction note completed five years prior.  *Id.*

It is unclear what objectively unverifiable results the ALJ believes that Dr. Haynes relied upon: he observed bony nodules, ulnar deviation, and swelling that impeded plaintiff's ability to close her fist and finely manipulate objects.  Tr. 809-10.  The ALJ apparently suspected that Ellington underperformed, though the record fails to support an allegation of malingering.  *See* tr. 626-27 (one physician noted that plaintiff's "description of [her] limitations appears consistent with the objective findings") & 828 (another opined that "[t]here was no evidence of embellishment").  Indeed, the ALJ only explains that "there have been no significant pathological changes in [plaintiff]'s joints, which would prevent her from picking up small items or from taking off her glasses with her fingers."  Tr. 17.  X-rays and rheumatological assessments of Ellington's hands, however, observed advanced, erosive osteoarthropathy that would tend to support those limitations.  Tr. 672-73; 690-93 & 719-20.

6

It is also unclear how Dr. Haynes' initial checklist assessment[3] (which may not have even been for plaintiff, as the diagnosis, name, and claim number are different than plaintiff's own) is objectively better supported by the record as a whole.  Other physicians have documented plaintiff's symptoms endorsing osteoarthritis.  Tr. 690-93 & 719-20 (rheumatologist's notes of symptoms consistent with osteoarthritis, "likely erosive OA").  Plaintiff has consistently alleged arthritis limits her use of her hands and that she is limited in her ability to lift more than 5-10 pounds by her back ailments.  Tr. 55.  And her daily activities, including driving, operating a riding lawnmower, and working in her garden "when she is able" (tr. 827 (describing her activity level as "average to below average"), cited at tr. 17) do not actually contradict Dr. Haynes' second checklist assessment that she is limited to only

---

[3]   The Commissioner explains that the ALJ had actually disregarded the inconsistently named checklist assessment entirely, and so he was weighing Dr. Haynes' May 2015 letter assessment and objective findings assessment alone against his October 2015 checklist assessment.  But the ALJ's decision is not clear on this point.  He only states that Dr. Haynes' "first assessment" is given partial weight because it "is more consistent with the record as a whole than his second assessment." Tr. 17.  That is all -- nothing about what parts of the tripart first assessment is being disregarded or discredited.  The Court is unable to assume, as the Commissioner does, that the ALJ intended to "partially credit" any one part of the three-part assessment, much less which individual limitations within those assessments are being specifically singled out as either endorsed or contradicted by the record.  However, as discussed below, it doesn't matter.

occasionally fingering/feeling/handling/pushing/pulling and lifting no more than twenty pounds at a time. *Compare* tr. 17 *with* tr. 838-49. Nor does Dr. Bradley Heiges' 2010 single-page work-restriction opinion limiting plaintiff to lifting 20 pounds or less at a time meaningfully undercut or contradict any of these observations or Dr. Haynes' opined limitation to 20 pounds or less.  Tr. 17 (citing tr. 669).

    Despite these problems, the ALJ provided one legitimate reason for discounting Dr. Haynes' opinion -- that plaintiff misreported her (lack of a) lupus diagnosis. To plaintiff's credit, there are inconsistent (suspected) diagnoses of lupus smattered around the record. Doc. 10 at 12 (citing tr. 615-22). In October 2011, for example, plaintiff had a positive ANA titer result (tr. 619), indicating lupus. *See Gordon v. Fed. Exp. Corp.*, 2014 WL 3611103 at *7 (M.D. Fla. Apr. 28, 2014) (noting correlation between positive anti-nuclear antibody test and lupus). So, as she rightly points out, her statement to Dr. Haynes that she "was diagnosed with lupus in 2011" is not wholly inaccurate. However, lupus was ruled out in favor of an osteoarthris diagnosis after a February 2014 blood test (tr. 693), more than a year before she told Dr. Haynes she had it. So she knew that she did not have lupus when she told Dr. Haynes

8

she did. And, as the Commissioner argues, her lack of candor in allowing Dr. Haynes to believe she had lupus could have colored his entire opinion as to her functional limitations. It also doesn't matter whether she intentionally lied or just got confused by her own medical history. Misrepresenting her diagnosis may have indeed altered Dr. Haynes' opinion to some extent to credit her with greater limitations than he would have otherwise imposed. This was a valid, clear reason to discount his opined limitations -- both the collective first and second assessments.

The Court, however, still cannot determine from the ALJ's decision just what part of Dr. Haynes' tri-part first assessment is being "partially credited." The ALJ wrote that he was partially crediting the first assessment (which part?) and discrediting the second. Neither the Court, nor the Commissioner, may post-hoc identify which of Dr. Haynes' opined limitations the ALJ was incorporating into his RFC assessment. Fortunately, it doesn't matter. Even if the Court fully credits Dr. Haynes' opinion that plaintiff would be "moderately impaired" in her ability to bend, stoop, lift, walk, crawl, squat, carry, travel, and push and pull heavy objects (tr. 810), it does not appear that plaintiff is precluded

9

from performing the narrowed spectrum of light work as assessed by the ALJ.  *See* tr. 16 (limiting her to light work with postural and manipulative limitations).  Plaintiff has not demonstrated how, even if fully credited as true, Dr. Haynes' initial letter assessment of her functional limitations would exceed those assessed by the ALJ.

### 2.   Dr. Fuerst's Opinion

The ALJ rejected Dr. Fuerst's opinion that Ellington is "mildly disabled" by both polyarthralgia and anxiety and "impaired" in her ability to bend, stoop, lift, walk, squat, carry, and push and pull heavy objects (tr. 626) as inconsistent with the record as a whole, based on only a short-term relationship with plaintiff, and inconsistent with Dr. Heiges' opinion.  Tr. 17.  As with Dr. Haynes, it is unexplained how the transient nature of the consultative examiner relationship, on its own, undermines Dr. Fuerst's opinion or how Dr. Heiges' opinion somehow contradicts Dr. Fuerst's own.  Nor is it clear precisely what clinical findings and observations or subjective testimony undercuts his vague opinion that plaintiff is "impaired" by her impairments.  As plaintiff concedes, however, there's not much to Dr. Fuerst's opinion.  Doc. 10 at 15.  The Court can find no error in the ALJ's failure to invent and

incorporate concrete functional limitations into his RFC assessment from these hazy references.

### 3. Dr. Whitley's Opinion

The ALJ also discounted Dr. Whitley's opinions that plaintiff's "ability to multitask and process large amounts of information in [a] work setting may be guarded based on her health issues and secondary depression" (tr. 649) and that she would be "moderately limited" in her ability to understand, remember, and carry out "complex instructions" or make judgment calls on "complex" work-related decisions (tr. 823). Tr. 17. He considered these opinions inconsistent with the record as a whole, based on only a short-term relationship, and contradicted by Dr. Heiges' opinion. Tr. 17. Dr. Heiges' opinion has nothing to do with plaintiff's mental limitations, so that reason is meaningless. And the nature of the consultative examination, on its own, cannot form the basis for wholesale rejection of Dr. Whitley's medical opinion -- particularly where, as here, the examiner saw plaintiff more than once over the course of three years. Tr. 645-50 (May 2012) & tr. 822-29 (May 2015).

In 2012 Dr. Whitley reported that plaintiff's depression would not preclude employment; she can communicate and interact with others

11

effectively; and she can follow conversational speech, make daily decisions, manage her own finances, and organize appointments and schedules. Tr. 649. He indeed cautioned that her ability to "multitask and process large amounts of information" is "guarded" -- but, contrary to plaintiff's argument, that warning does *not* equate to an inability "to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions" or require limitation to "a lower stress work environment." There's nothing here to help plaintiff.

His 2015 checklist opinion that she may be "moderately limited" in her ability to deal with complex instructions and complex work-related decisions and "mildly limited" in her ability to respond to work situations and changes in routine (tr. 823), however, complicates the matter. Indeed, the VE testified that a "moderate limitation" on the ability to understand, remember, and perform complex instruction and make judgments on complex work-related decisions would preclude plaintiff's ability to return to her prior work, and the ALJ did not ask whether alternative work existed that she could perform. Tr. 62-63.

In his written report accompanying the checklist, however, Dr. Whitley further (inconsistently) opined that plaintiff "appear[ed] to have

the ability to understand, follow, and process multiple step instructions" and that her "ability to sustain effort, focus, [and] pace during a typical workday with multiple step directions" would be only "mildly impacted." Tr. 829. Even if the opinion is fully credited, the Court is unclear just what Dr. Whitley believed about Ellington's ability to handle complex, multistep instructions. *See, e.g., Ginley v. Berryhill*, 2018 WL 1027660 at *6 (N.D. Ohio Jan. 31, 2018) ("complex" and "multistep" instructions are interchangeable terms); *Dickinson v. Colvin*, 2016 WL 8252567 at *4 (E.D. Wash. July 19, 2016) (same); *Strimel v. Berryhill*, 2017 WL 4127610 at *8 (E.D. Tenn. Sept. 15, 2017) (same). It cannot reweigh Dr. Whitley's opinion to make that call. *Sprinkel v. Berryhill*, 2017 WL 4172501 at *6 (S.D. Ga. Aug. 28, 2017) ("the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered."). Regardless, it is clear that both Dr. Whitley *and* the ALJ thought there was some limitation there. Surprisingly, at Step 2 the ALJ specifically found that plaintiff was "mildly" limited in concentration, persistence, and pace due to her medically determinable (but nonsevere) affective and anxiety disorder impairments (tr. 14), yet

13

without explanation found *no* mental limitations at Step 4. *See Sprinkel*, 2017 WL 4172501 (remanding for reconsideration where mild concentration, persistence, and pace limitations were found at Step 2 but none were built into the RFC).

The Court is at a loss as to how to reconcile these inconsistencies. The Commissioner encourages the Court to examine plaintiff's sporadic mental health treatment (doc. 13 at 20 (citing ALJ's credibility analysis of plaintiff's subjective pain testimony at tr. 17)), but even had the ALJ pointed to that reasoning, the failure to afford such treatment erodes it. *See* SSR[4] 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). Defendant points to plaintiff's self-report, some six months later, that she is "stable on meds" (doc. 13 at 20) but that claim was explicitly made in the context of her depression treatment. *See* tr. 940 ("Pt. states no depression stable on meds."), cited at tr. 17. It is unclear (and the ALJ certainly did not explain) how that admission is apposite to Ellington's ability to handle multistep, complex tasks. The Commissioner also recapitulates

---

[4] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

plaintiff's admitted daily activities to support a finding that she is not so mentally limited as Dr. Whitley said (doc. 13 at 18 (citing tr. 648)), but the Court cannot find that gardening, cleaning the house, simple cooking, attending church and a bike club, and managing personal finances prove Ellington is mentally capable of her past relevant work -- work that she could only perform without mental functioning deficits. *See* tr. 62-63 (VE testimony).

The ALJ did not explain his reasoning (if he even considered that evidence in his analysis of plaintiff's mental RFC) and the Court cannot reweigh the evidence to provide an explanation.[5] *Mills v. Astrue*, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"). Between Steps 2 and 4 the ALJ dismissed plaintiff's mild limitations in concentration, persistence, and pace to find

---

[5] The Court appreciates the Commissioner's post-hoc rationalizations for the ALJ's credibility finding (*see, e.g.*, doc. 13 at 20-21 (explaining, for example, that plaintiff's self-report of lupus undermined Dr. Whitley's mental health assessment, where the ALJ clearly discredited *only* Dr. Haynes' opinion on that basis, *see* tr. 17)), but reminds her that "the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered." *Sprinkle*, 2017 WL 4172501 at *6.

that she had *no* mental functional limitations. That, coupled with his unsupported rejection of Dr. Whitley's opinion that plaintiff was in some fashion so limited (albeit perhaps not "moderately limited") requires remand for reconsideration.

B.   Plaintiff's Credibility

The ALJ discredited plaintiff's subjective testimony as to the debilitating extent of her symptoms based on her activities of daily living and minimal treatment history. Tr. 17. When a claimant attempts to establish disability based on her pain or other subjective symptoms, a three-part "pain standard" applies. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). It requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* at 1225; *see also* 20 C.F.R. § 404.1529(a)-(b). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R.

§§ 404.1529(b), 416.929(b). The ALJ may consider the history and testimony, medical signs and laboratory findings, medical opinion evidence, as well as other evidence introduced in the record. *See id.* §§ 404.1529(c), 416.929(c). If the ALJ decides to discredit the claimant's testimony about her symptoms, he must adequately explain his reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Regarding plaintiff's physical functional restrictions, as noted above, plaintiff's inability to afford treatment should have been considered regarding her failure to pursue more than "minimal treatment for her back and neck complaints" (tr. 17). *See generally* SSR 13-6p. It was error to discredit her testimony without acknowledging that very real barrier to more regular or comprehensive treatment. As to her admitted daily activities, however, the ALJ permissibly pointed to evidence that she was not totally disabled by her physical impairments. She gardens, drives, folds laundry, operates a riding lawnmower, and largely takes care of her personal needs without issue, though it may take her some time to do so. Tr. 17; *see* tr. 375-82, 645-50, 827. Though the Court may have weighed the evidence differently, given her mitigating statements explaining the decline in her

physical abilities (*see* tr. 38, 55-56, 85, 96-98, 100-02, 382, 827), it is the function of the Commissioner, and not the court, to pass on the credibility of witnesses.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 213 F. App'x 778, 779 (11th Cir. 2006); *Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1242 (11th Cir. 1983). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

Here again, however, the Court is unable to identify the ALJ's reasoning in rejecting plaintiff's claim of mental limitations.  There is nothing explaining his finding of no mental functional restriction at Step 4 (despite finding "mild" limitations at Step 2) except for plaintiff's "only sporadic treatment from a mental health counselor."  Tr. 17; *but see* tr. 52-53 (the ALJ asked "And are you -- who is treating -- who were you treating with for your mental health?"  Ellington responded that she was occasionally seeing someone at a clinic out in Swainsboro, because ". . . I don't have insurance and no income.  And a lot of the specialists, you know, they won't set up arrangements for payments or anything.").  As noted above, that's just not enough.  ALJs cannot fault a claimant for

18

failing to seek medical treatment without considering the reasons she failed to pursue it. SSR 16-3p; *see, e.g., Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016) ("Although an ALJ may find a plaintiff less credible if she failed to seek medical treatment, an ALJ is obligated to consider any explanation a plaintiff may have for such failure" such as poverty or lack of insurance). And the Court cannot *sua sponte* troll the administrative record to come up with another reason in the ALJ's stead. *Mills*, 226 F. App'x at 931-32.[6]

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and

---

[6] The Court does not pass on the ALJ's accordance of "great weight" to the agency reviewer's, because both found plaintiff had "mild" difficulties in maintaining concentration, persistence, or pace (tr. 118 & 145), which the ALJ credited at Step 2 and abandoned at Step 4. Since remand is warranted on this issue, the Court admonishes the Commissioner to reconsider their opinions insofar as they add to the inclusion or exclusion of any mental functional limitation at Step 4.

this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; see *Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __1st__ day of March, 2018.

*[signature: R. Smith]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA